In the Matter of COLONIAL REALTY COMPANY, Debtor.

COLONIAL REALTY COMPANY, Plaintiff,

v.

RIVER BANK AMERICA, Frank Satterwhite, as Receiver, Defendants.

Bankruptcy No. 2–90–01980.
Adv. No. 2–90–2231.

United States Bankruptcy Court,
D. Connecticut.

Nov. 30, 1990.

Jack Weinberg, Colonial Realty Co., West Hartford, Conn., Mark S. Shipman, Hartford, Conn., for debtor.

Dennis B. Arnold, and Gregory M. Salvato, Gibson, Dunn & Crutcher, and Michael D. O'Connell, and Robert A. DeFrino, O'Connell, Flaherty, Attmore & Forsyth, Hartford, Conn., for River Bank America.

Bruce Cornelius, Graves, Allen, Cornelius & Celestre, and Robert A. DeFrino, O'Connell, Flaherty, Attmore & Forsyth, Hartford, Conn., for Frank Satterwhite, As Receiver.

Frank S. Occhipini, Anderson Kill Olick & Oshinsky, Robert A. White, Murtha, Cullina, Richter & Pinney, Hartford, Conn., for Official Committee of Unsecured Creditors.

MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY,
Chief Judge.

## I.

### ISSUE

The questions presented here are (1) whether a property management agreement between a real property owner and the debtor is property of the estate and (2) whether postpetition acts taken by a mortgagee foreclosing on the real property in securing the appointment of a receiver and the receiver's subsequent actions in replacing the debtor violate the automatic stay provisions of Bankruptcy Code § 362(a). The parties have presented the matter sole-

ly on briefs, and the following background is based upon the pleadings and apparently uncontroverted statements contained in the briefs.

## II.

## BACKGROUND

Colonial Realty Company, the debtor, is a general partnership located at 65 Kane Street, West Hartford, Connecticut, with Jonathan Googel (Googel) and Benjamin Sisti (Sisti) being the general partners. One of the businesses conducted by the debtor is the management of approximately 80 different properties located throughout 14 states. On September 14, 1990, several creditors filed an involuntary petition under chapter 7 against the debtor. The debtor, on September 27, 1990, consented to the entry of an order for relief and, pursuant to Code § 706(a), converted the case to one under chapter 11.

A property managed by the debtor on the date of the filing of the involuntary petition, known as Bayside Commons Apartments (Bayside property), is a 295–unit apartment complex located in Albany, California. Colmark I Limited Partnership (Colmark), a Connecticut limited partnership whose main office is at 65 Kane Street, West Hartford, Connecticut, the same as that of the debtor, owns the Bayside property. The general partners of Colmark are Googel, Sisti and Colonial Realty II, a Connecticut general partnership.

Colmark and the debtor had entered into a management agreement on February 23, 1990 (agreement) under which Colmark employed and appointed the debtor as "the sole and exclusive renting and management agent to rent, lease, operate and manage" the Bayside property. The agreement's expiration date is December 31, 1990, but the agreement provides that it is automatically renewed for one-year periods unless either party 60 days prior to an expiration date notifies the other in writing of an intention to terminate. The agreement grants the debtor authority to enter into and terminate tenancies, collect the rents, hire and discharge all employees needed to operate and maintain the property, make contracts for all utility and other services, pay all expenses of operation and maintenance, including those for repair, decoration and alteration of the premises, and remit any excess rents monthly to Colmark together with a statement of receipts and expenses. The debtor's compensation is based on five percent of all income collected, an "Accounting Service Fee" of $2.50 per unit, and five percent of the cost of any major structural repair or renovation of the premises which the debtor supervises. Googel, as a general partner of Colmark, and Sisti, on behalf of the debtor, executed the agreement. On an annualized basis, the income to the debtor under the agreement approximates $150,000.00.

River Bank America (River Bank), a New York banking corporation, is the holder of a $24,000,000.00 note and first Construction Deed of Trust (mortgage) containing an assignment of rents, both executed by Colmark on October 9, 1986, secured by the Bayside property. Colmark further secured the debt by executing a separate assignment of rents, a security agreement and a fixture filing. The assignment of rents clause in the mortgage authorizes Colmark to collect the rents "prior to or at any time there is not an event of default under any of the Loan Instruments."

By letter dated September 6, 1990 addressed to Colmark and Colonial Realty II at the 65 Kane Street office, River Bank advised that due to its failure to receive August and September 1990 interest payments amounting to $222,597.22 each, it was exercising its right to accelerate the obligation due under the Colmark note, and demand was made for the principal balance of $23,500,000.00 plus $582,343.12 in interest and charges to date of the letter. River Bank also sent the letter to the debtor, Googel and Sisti, as "Guarantors." When payment of the demanded amount was not received, River Bank, on September 21, 1990, commenced a judicial mortgage foreclosure action in the Superior Court of the State of California for the County of Alameda (Superior Court). As part of that action, River Bank sought the appointment of a receiver for the Bayside property, and

the Superior Court, on September 27, 1990, appointed Frank Satterwhite (Satterwhite) as such receiver.

The Superior Court order appointing the receiver authorized him to "take possession" of the Bayside property, including "cash or security deposits"; to exclude Colmark "or anyone claiming under or through Colmark who is not under a valid lease or rental agreement"; to "use, operate, manage and control the [Bayside property]" and "to demand, collect and receive the rents"; to use the Sheriff of the County of Alameda to "keep possession and control of the [Bayside property]"; and to "take any and all steps necessary to receive, collect, and review all mail addressed to Colmark, including, but not limited to, mail addressed to Colmark c/o Colonial Realty, 65 Kane Street, West Hartford, Connecticut 06119, and the Receiver is authorized to instruct the U.S. Postmaster to re-route, hold, and/or release the mail to the Receiver."[1] Satterwhite, on September 27, 1990, took over management control of the Bayside property and has remained in such continuous control.

A Satterwhite affidavit, attached to a pleading, states that on the day Satterwhite took possession of the Bayside property, he learned that the debtor was the property manager. He then "elected to suspend Debtor as property manager to prevent Debtor from collecting and disbursing rents and profits generated by the subject property." He avers that the "onsite employees are now on the Receiver's payroll rather than Debtor's payroll." Satterwhite Affidavit ¶¶ 4 & 6 (October 24, 1990). Debtor's counsel, by letter dated October 4, 1990, demanded that River Bank take steps to, *inter alia*, "restore to the Debtor (i) possession of the property as manager and (ii) the revenue and income to which the Debtor is entitled."

On October 22, 1990, the debtor filed a complaint in this court against River Bank and Satterwhite (the defendants), alleging that the actions of the defendants were in violation of the stay provisions of Code § 362(a). Concurrent with the filing of the complaint, the debtor moved this court, pursuant to Bankruptcy Rule 7012, for an order shortening the time for the defendants to answer the complaint and to respond to discovery. At a noticed hearing held on October 26, 1990 on the motion to shorten time, the parties agreed that they would, on an expedited basis, brief the issues as stated in Section I of this ruling, with the other relief requested by the debtor's motion deemed withdrawn. The court, on October 30, 1990, entered its order to that effect.

## III.

### DISCUSSION

A factual issue on which the parties' briefs differ is at what point the defendants, or either of them, became aware of the existence of the debtor's bankruptcy case. That issue is not presently relevant in light of the defendants' contention that their actions outlined herein were and remain proper, notwithstanding the pendency of the debtor's bankruptcy case.

### A.

#### *The Management Agreement As Property Of The Estate*

■ Discussion of the first issue noted—whether the management agreement is property of the debtor's estate—can be short. The defendants' briefs acknowledge that Code § 541(a)(1)[2] encompasses the management agreement as property of the debtor's estate. *See In re Carroll*, 903 F.2d 1266, 1270–71 (9th Cir.1990) ("Since we find the [management] agreement to be

---

1. *River Bank America v. Colmark I Limited Partnership,* Super.Ct., Alameda County, Case No. 670338–9 Order Appointing Receiver and Granting Preliminary Injunction pp. 2–4 (September 27, 1990).

2. *§ 541. Property of the Estate.*

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

property of the estate, it was protected by the automatic stay...."). "The legislative history of § 541(a) makes clear that the definition of property 'will bring anything of value that the debtors have into the estate,' including 'tangible and intangible property ... whether or not transferrable by the debtor.'" *In re Prudential Lines, Inc.*, 119 B.R. 430, 432 (S.D.N.Y.1990) (citations omitted). I conclude that the management agreement was property of the estate on the date of the filing of the involuntary petition against the debtor.

### B.

### *The Defendants' Acts And The Automatic Stay*

Code § 362(a) provides:

[A] petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of—

. . . . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate ....

■■■ Courts, noting the explicit legislative history of Code § 362(a),[3] have uniformly emphasized the centrality of the automatic stay to the entire scheme of debtor and creditor protection embodied in the Bankruptcy Code. The stay is effective automatically and immediately regardless of actual notice upon the filing of a voluntary or involuntary petition. Actions taken which knowingly or unknowingly violate the stay are void and of no effect. *In re Smith*, 876 F.2d 524, 525–26 (6th Cir. 1989). The Code contains procedures for any party to obtain prompt relief, for cause, from the automatic stay. Code § 362(d)-(f). The operation of the stay does not necessarily depend on the debtor having either a legal or equitable interest in the property as it applies to property merely in the debtor's possession. *In re Atlantic Business & Community Corp.*, 901 F.2d 325, 328 (3rd Cir.1990); *Turbowind, Inc. v. Post Street Management, Inc. (In re Turbowind, Inc.)*, 42 B.R. 579, 585 (Bankr.S.D.Cal.1984).

■■■ On September 14, 1990, when creditors filed a petition under Code § 303 against the debtor, the debtor had full management control of the Bayside property pursuant to its contract with the property owner. The defendants' acts in removing the debtor from such management control were direct acts to obtain possession of property of and from the estate. As the Satterwhite affidavit outlines, he ousted the debtor from its position as property manager, stopped the debtor from collecting rents and prevented the debtor from performing under the agreement. Under the circumstances, I believe the defendants' acts of unilaterally suspending management control of the Bayside property is as violative of the automatic stay as a creditor using the self-help measures of evicting a holdover tenant in bankruptcy, *Atlantic Business, supra,* or repossessing chattels in the debtor's possession, *Turbowind, supra.*

The defendants' principal contention appears to be that because the debtor was not a party named in the River Bank foreclosure action, any acts of the receiver in ousting the debtor are legitimate. This argument is not convincing. Not naming the debtor as a party in a foreclosure action brought against a non-debtor does not

---

**3.** The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of claims in preference and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.
H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977) *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 6296–97.

thereby permit a secured party to exercise control over property of a debtor's estate.[4]

I believe that the defendants' acts were and remain direct acts to obtain possession of a property of the estate, but even if the effect on the debtor of the defendants' acts could be labeled, as asserted by the defendants, indirect, my conclusion that the stay has been violated would not change. River Bank asserts the actions of the receiver had an "incidental, indirect effect on a mere contractual interest held by the debtor [which] does not give rise to the automatic stay" and that "courts have consistently held that Section 362(a)(3) stays only such actions that are direct actions against the debtor or against the debtor's property." River Bank Memorandum at 10–11. The relevant holdings are to the contrary. "[W]here a non-debtor's interest in property is intertwined ... with that of a bankrupt debtor [and] [i]f action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt[cy] estate, then such action should be barred by the automatic stay." *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2nd Cir.1987) *cert. denied* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (Landlord's notice of termination of prime lease violated automatic stay where if prime lease terminated, debtor's subtenancy would be destroyed.). Code § 362(a)(3) stays "any action, *whether against the debtor or third-parties*, to obtain possession or to exercise control over property of the debtor." *A.H. Robbins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.1986) (emphasis in original) *cert. denied* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177.

River Bank, citing *Cardinal Industries, Inc. v. Buckeye Fed. Sav. & Loan Ass'n (In re Cardinal Industries, Inc.)*, 105 B.R. 834 (Bankr.S.D.Ohio 1989), claims that the automatic stay does not protect a party's interest in a partnership from actions taken by a creditor against property owned by a non-debtor partnership. The short answer to this claim is that the debtor here has no interest in the Colmark partnership beyond its contractual agreement to manage the Bayside property. In other respects, *Cardinal Industries* does not address the issues raised by this proceeding.

River Bank argues that the debtor's property rights are of little benefit to the estate, that these rights are not assignable, and that River Bank's entitlement to the rents is superior to those of Colmark and of the debtor. Satterwhite's contentions, in general, echo those of River Bank and emphasize his right to the rents being superior to the debtor's. These, and like issues, are not now before the court. The sole issue is whether the automatic stay applies to the postpetition acts of the defendants, not whether the defendants can establish cause for relief from the stay.

## IV.

### CONCLUSION

The management agreement between Colmark and the debtor, on September 14, 1990, was property of the debtor's estate, and those postpetition acts of River Bank and Satterwhite resulting in the removal of the debtor as property manager under the management agreement violated the automatic stay provisions of Code § 362(a)(3).

---

**4.** River Bank acknowledges in its Reply Brief at pp. 8–10 that the automatic stay applies to property owners such as Colmark who would seek to affect a management agreement with a property manager who is a debtor in a bankruptcy case.

The loan documents executed by Colmark require Colmark to assign to River Bank any management agreement it enters into. Apparently, Colmark failed to comply with this obligation.