**In the Matter of Joseph P. CAPPADONNA, Debtor.**

**Bankruptcy No. 92–28027.**

United States Bankruptcy Court, D. New Jersey.

April 1, 1993.

Mark Goldman, East Orange, NJ, for debtor.

Budd Larner, Gross, Rosenbaum, Greenberg & Sade, Cherry Hill, NJ, by Stephen McNally, for The Howard Sav. Bank, N/K/A First Fidelity Bank, N.A.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

The Howard Savings Bank n/k/a First Fidelity Bank, N.A. brought this motion seeking relief from the automatic stay in order to continue foreclosure proceedings against the principal residence of the debtor, Joseph P. Cappadonna. As this matter goes to issues involving property of the estate and the automatic stay, it is a core proceeding as defined by Congress in 28 U.S.C. Sec. 157 *et seq.* The within opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FINDINGS OF FACT

1. On July 3, 1987, Joseph Cappadonna (the "debtor") and his wife, Joanne Cappadonna, executed and delivered a note in the principal amount of $89,000.00 to the Howard Savings Bank n/k/a First Fidelity Bank, N.A. (the "Howard"). The note was secured by a mortgage on the debtor's principal residence located at 9 Madoc Trail, Oak Ridge, New Jersey.

2. On or about June 12, 1990, the debtor defaulted on his mortgage payment obligations to the Howard and was thereafter

in violation of the terms and conditions of the note and mortgage.

3. Approximately eight months later, on February 5, 1991, the Howard filed a complaint in foreclosure against the debtor in the Superior Court of New Jersey, Chancery Division, Morris County.

4. While the foreclosure action was proceeding, the debtor, on November 21, 1991, filed a voluntary petition for relief under chapter 13 of the United States Bankruptcy Code, file number 91–27953.

5. On March 9, 1992, the Howard sent the debtor a letter indicating the amount due to it inside the chapter 13 plan as well as the current amount in arrears. The Howard also filed a proof of claim in the debtor's initial bankruptcy on April 22, 1992.

6. On April 9, 1992, while aware that the debtor's bankruptcy proceeding was still pending, the Howard allowed a final judgement of foreclosure to be entered against the debtor and his wife in New Jersey Superior Court. The Howard alleged that, due to the backlog of foreclosure cases in the state court system, it was unable to have the action pulled before judgement was entered.

7. For reasons irrelevant for present purposes, the debtor's Chapter 13 petition was dismissed by the bankruptcy court on May 18, 1992.

8. On August 10, 1992, following the dismissal of the debtor's bankruptcy, the Howard filed an Order to Show Cause in the Superior Court of New Jersey seeking to have the April 9, 1992 foreclosure judgement, which was obtained during the pendency of the debtor's bankruptcy proceeding, confirmed *nunc pro tunc*.

9. An order confirming the prior judgement *nunc pro tunc* was entered on September 16, 1992. Thereafter, the Howard resumed its efforts to foreclose on the debtor's residence.

10. On October 5, 1992, the debtor filed this present chapter 13 petition, file number 92–28027.

11. On November 23, 1992, the Howard filed the within motion for relief from the stay to continue prosecution of its foreclosure action pursuant to the April 9, 1992 order confirmed *nunc pro tunc*, September 16, 1992.

12. The debtor filed opposition to the Howard's request on December 14, 1992.

13. A final hearing was held on the within motion on January 19, 1993 and decision was reserved thereon.

## DISCUSSION

As stated above, the Howard has moved for relief from the automatic stay to continue its foreclosure action against the principal residence of the debtor. As its basis for relief, the Howard relies on an April 9, 1992 judgement of foreclosure, confirmed *nunc pro tunc* September 16, 1992, which extinguished the note and mortgage executed by the debtor and his wife and permitted the Howard to proceed to sheriff's sale. Because the debtor has not redeemed the property pursuant to the sixty (60) day time limit prescribed by 11 U.S.C. § 108(b), the Howard argues it is entitled to the relief requested as a matter of law. The debtor, on the other hand, argues that because the judgement of foreclosure was obtained during the pendency of the debtor's initial bankruptcy proceeding, it was obtained in violation of the automatic stay and is therefore void *ab initio*. Accordingly, the debtor argues that there was nothing for the Howard to confirm *nunc pro tunc* and therefore, the stay should not be lifted on this basis as the mortgage and note still exist. Thus, the sole legal issue before this court is whether the judgement of foreclosure obtained on April 9, 1992 and confirmed September 16, 1992 *nunc pro tunc* is valid or void.

Pursuant to 11 U.S.C. § 362, the filing of a chapter 13 bankruptcy petition invokes an automatic stay against all creditors from performing any acts to create, perfect, or enforce any lien against property of the estate and property of the debtor. 11 U.S.C. § 362(a)(4) & (5). The purpose of the automatic stay is to give the debtor a breathing spell from his creditors and stop, among other things, all collection efforts,

harassment and foreclosure actions. 11 U.S.C. § 362 (Historical and Revision Notes). Section 362 thus enables the debtor to attempt a repayment or reorganization plan or simply to be relieved of the pressures that drove the debtor into bankruptcy. *Id.*

■ The Third Circuit has recognized that the effect of the automatic stay provision of the bankruptcy code is to "suspend any non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor." *Maritime Elec. Co. Inc., v. United Jersey Bank,* 959 F.2d 1194, 1206 (3d Cir.1991). As set forth in the language of section 362 of the bankruptcy code, the automatic stay is "applicable to all entities," including state and federal courts. *Id.* Appropriately, unless the bankruptcy court grants relief from the stay, all judicial actions and proceedings against the debtor initiated while the stay is in effect are void *ab initio. Id.; see also, Kalb v. Feuerstein,* 308 U.S. 433, 438–39, 60 S.Ct. 343, 346, 84 L.Ed. 370 (1940).

■ As the Howard correctly states, the Third Circuit has held that a bankruptcy court cannot overturn a validly entered state court judgement and can only overturn state court actions that are void *ab initio. See James v. Draper (In re James),* 940 F.2d 46, 52 (3d Cir.1991). In the case at bar, however, it is quite clear that the judgement of foreclosure obtained by the Howard on April 9, 1992 in New Jersey state court *is* void *ab initio* because it was obtained in violation of the automatic stay. This court therefore has the right to overturn that action. *See Kalb v. Feuerstein,* 308 U.S. at 438–39, 60 S.Ct. at 346; *Maritime Electric,* 959 F.2d at 1206; *In re James,* 940 F.2d at 52.

A simple review of the dates involved in the instant matter supports a finding that the automatic stay was violated. The debt-

or filed a chapter 13 petition in bankruptcy court on November 21, 1991. As of this date, the automatic stay was triggered and all creditors, including the Howard, no longer had a right to proceed with actions against the debtor in either state or federal court. *See* 11 U.S.C. § 362. Despite the fact that the debtor was under the protection of the automatic stay, and that the Howard had actual knowledge of the debtor's bankruptcy petition as evidenced by its March 9, 1992 letter to the debtor, the Howard nonetheless proceeded to secure a final judgement in foreclosure against the debtor in New Jersey Superior Court on April 9, 1992. Clearly, this judgement against the debtor was obtained in violation of the stay. As such, the judgement was void from the beginning and carries no legal force or effect now.

■ The Howard proffers the argument that the September 16, 1992 order confirming that April 6, 1992 foreclosure judgement *nunc pro tunc* was a validly entered order that was not obtained during the debtor's bankruptcy proceeding. Accordingly, the Howard argues, pursuant to *In re James supra,* that order cannot be overturned by this court. Although this is a gracious attempt to avoid the consequences of violating the automatic stay, such an argument belies the obvious meaning of judgements that are void *ab initio.* "Ab initio" is from the Latin meaning "[f]rom the beginning." Black's Law Dictionary, 5th Ed. (1979). Accordingly, once the Howard's judgement of foreclosure became void *ab initio* by virtue of the violation of the automatic stay, it was as if the entire foreclosure proceeding had never occurred. Consequently, there was nothing for the Superior Court judge to confirm *nunc pro tunc* on September 16, 1992.[1]

In making its finding, this court is not unaware of the vast time span required for completion of state court foreclosure proceedings. Moreover, this court is cogni-

---

1. From the facts presented, it does not appear that the New Jersey Superior Court judge was ever made aware that the initial judgement of foreclosure was obtained during the pendency of the debtor's bankruptcy proceeding and without relief from the automatic stay. However,

even if the Superior Court judge was made aware, the law is clear that judgements entered during the pendency of a bankruptcy proceeding without relief from the stay are void *ab initio.*

zant of the fact that the Howard must now start from the beginning in its foreclosure attempt, whereas, had the automatic stay not been violated, the Howard could have, upon obtaining relief from the automatic stay, continued to proceed from the point it was at when the debtor filed for bankruptcy protection.[2] Nevertheless, even if the court were to accept the Howard's excuse that the judgement of foreclosure was entered against the debtor because of a backlog in the Office of Foreclosure, this court would be lax to find differently. To hold otherwise would result in the unwanted effect of rewarding creditors for violation of the automatic stay. Should the court allow a creditor, who knowingly obtains a judgement in violation of the automatic stay, to ratify that judgement once the debtor is outside of bankruptcy protection, what will stop all creditors from proceeding to judgement in violation of the stay? This would certainly defeat the purpose of the automatic stay, which is to afford protection to debtors and enable them to focus attention on their bankruptcy proceeding. Thus, while the court is certainly cognizant of the Howard's position, it cannot allow actions of creditors to erode the purpose and intent behind the provisions of the automatic stay.

## CONCLUSION

For the foregoing reasons, the court finds that the foreclosure judgement obtained by the Howard on April 9, 1992 was in violation of the automatic stay and therefore that judgement, as well as the September 9, 1992 Order confirming the judgement *nunc pro tunc*, are void *ab initio*. Consequently, the Howard's motion for relief from the automatic stay to continue foreclosure against the debtor's residence on the basis of the April 9, 1992 judgement is hereby denied. Consistent with this opinion, the Howard should take the necessary steps in the New Jersey Superior Court to vacate the April 9, 1992 judge-

ment in foreclosure as well as the September 16, 1992 Order confirming said judgement. The Howard is free to move to vacate the stay in the ordinary course.

---

**2.** If the Howard, upon receipt of the April 6, 1992 judgement entered in violation of the stay, had immediately moved in the bankruptcy court to have the stay vacated, this one year delay would have been avoided. As the leading Third

Circuit case of *Maritime Elec. Co., Inc. v. United Jersey Bank* was decided prior to April 6, 1992, the law was clear with regard to the status of judgements obtained in violation of the automatic stay.