[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a foreclosure action brought by the plaintiff, Renato Gugliotti, against the defendants, Andre L. Michaud and Bank Street Realty. Before the court is the receiver of rent's motion to hold Michaud in contempt because of his failure to surrender rent payments received from commercial and residential tenants of the subject property. A chronological summary of the factual and procedural history of this case follows.
On June 28, 1995, the plaintiff commenced an action against the defendants to foreclose upon the subject property, a structure located at 989 Bank Street in Waterbury Connecticut. Thereafter, on July 31, 1995, at 9:30 a.m., Michaud filed a petition for bankruptcy in the United States Bankruptcy Court for the District of Connecticut. Later that same day, Judge CT Page 3050 West of the Superior Court, upon the motion of the plaintiff, appointed Salvatore Agati receiver of rents for the subject property.
On September 13, 1995, the defendant voluntarily dismissed the bankruptcy action and, on or about this same date, filed a new petition in the Bankruptcy Court. In response, the plaintiff filed a motion to dismiss this second petition on the ground that it was filed within 180 days of the earlier petition in violation of § 109 of the Bankruptcy Code. The Bankruptcy Court, Dabrowski, J., granted this motion on November 9, 1995, and dismissed the case with prejudice.
On December 8, 1995, Agati filed the operative motion for contempt wherein he alleges that "Mr. Michaud, Jr., has notified tenants that if they fail to pay their rents to him, he will commence summary process actions to have them removed" in violation of the court order appointing him the receiver of rents for the subject property. Agati has also filed a memorandum of law in support of his motion. In opposition, the defendant has also filed a memorandum of law. Oral argument was heard before the court, Kulawiz, J., at short calendar on January 16, 1996.
A motion for contempt invokes the trial court's exercise of discretion. Schurman v. Schurman, 188 Conn. 268, 273,449 A.2d 169 (1982). Courts have inherent power to coerce compliance with their orders through appropriate sanctions for contemptuous disobedience of them. The contempt remedy is particularly harsh and may be founded solely upon some clear and express direction of the court. The authority of a court to find a party in contempt is founded in the court's need to have the ability to coerce compliance with its orders. Tufano v.Tufano, 18 Conn. App. 119, 125, 556 A.2d 1036 (1989).
In ruling on the instant motion, the court inquires into three areas: (1) the validity of the order by which Agati was appointed receiver of rents ("the order"); (2) the effect of the subsequent dismissal of the bankruptcy case on the order; and (3) whether Michaud may be held in contempt for violation of this order. A separate discussion of each follows.
This court first considers the fact that the appointment of the receiver occurred after the filing of the bankruptcy petition. "The object of appointing receivers is to secure the CT Page 3051 property in dispute from waste of loss." Hartford FederalSavings Loan Assn. v. Tucker, 196 Conn. 172, 175, 491 A.2d 172
(1985). "The receiver is an officer of the court appointed on behalf of all who may establish an interest in the property. . . . [he or she] holds the property as an arm of the court and his possession is not that of the mortgagee." Id.
The filing of a bankruptcy petition generally stays all actions taken to realize the value of collateral given by the debtor. United Savings Assn. of Texas v. Timbers of InwoodForest Associates, Ltd., 484 U.S. 365, 369, 108 S.Ct. 626,98 L.Ed.2d 740 (1988). Bankruptcy Code § 362(a) outlines the automatic stay applicable in bankruptcy proceedings and provides in pertinent part:
 [A] petition filed under section 301, 302, or 303 of this title, . . . operates as a stay applicable to all entities, of —
. . . .
 (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.
(Emphasis added.). The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. MidlanticNational Bank v. New Jersey Dept. of Environmental Protection,474 U.S. 494, 503, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). Actions taken which knowingly or unknowingly violate the stay are generally void and of no effect. In re 48th StreetSteakhouse, Inc., 835 F.2d 427, 431 (2d Cir. 1987), cert. denied, sub nom. Rockefeller Group, Inc. v. 48th StreetSteakhouse, Inc., 485 U.S. 1035 (1988). Thus, the stay iseffective immediately upon the filing of the petition and any proceedings or actions described in section 362(a)(1) are voidand without vitality if they occur after the automatic staytakes effect. Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522,527 (2nd. Cir. 1994). Moreover, "actions taken in violation of the stay are void even when there is no actual knowledge of the stay." In Re Marine Pollution Service, Inc., 99 B.R. 210, 217
(Bkrtcy. S.D.N.Y. 1989) (citing Kalb v. Feurstein, 308 U.S. 433,60 S.Ct. 343, 84 L.Ed. 370 (1940)). CT Page 3052
In the present case, it is clear from the record that the appointment of Agati occurred after the filing of the bankruptcy petition. At the same time, it is clear that the appointment of a receiver of rents violates the automatic stay. Matter ofColonial Realty, 122 B.R. 1, 5 (Bkrtcy. D.Conn. 1990). InColonial Realty, the Chapter 11 debtor filed a complaint alleging a violation of the automatic stay. The bankruptcy court, Krechevsky, J., held that a foreclosing mortgagee's act of securing appointment of a receiver of rents, and the receiver's subsequent actions in taking control of the property, violated the automatic stay imposed in a bankruptcy case. Id.,4-5.
In accordance with Colonial Realty, the Superior Court's appointment of Agati was void ab initio because it was obtained in violation of the automatic stay. It is, therefore, without legal force or effect at the present time.
Agati attempts to avoid the consequences of the plaintiff's violation of the automatic stay by arguing that the subsequent dismissal of the bankruptcy case pursuant to Bankruptcy Code § 349 served to "reinstate" his appointment as receiver of rents. Bankruptcy Code § 349 describes the effect of the dismissal of a bankruptcy case and provides in pertinent part:
 (b) Unless the court, for cause, orders otherwise, the dismissal of a case under this title . . .
(1) reinstates —
 (A) any proceeding or custodianship superseded under section 543 of this title [11 USCS 543];
 (B) any transfer avoided under section 522, 544, 545, 547, 548, 549 or 724(a) of this title [11 USCS § 522, 544, 545, 547, 548, 549, 724(a)], or preserved under section 510(c)(2), 522(i)(2), or 551 of this title [11 USCS §§ 510(c)(2), 522(i)(2), 551]; and
 (C) any lien voided under section 506(d) of this title [11 USCS CT Page 3053 § 506(d)] . . .
 (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title [11 USCS § 101
et seq.].
In support of this argument, Agati relies exclusively uponIn Re Linton, 35 B.R. 695 (Bkrtcy.D.Idaho 1983), for the proposition that the dismissal of a bankruptcy case validates actions taken in violation of the automatic stay. In Linton,
the debtor filed a Chapter 13 petition shortly before the creditor perfected its security interest in the subject collateral. Thereafter, the debtor's Chapter 13 proceeding was dismissed and the creditor sought to foreclose its lien upon the collateral. The court allowed the perfection of the security interest to stand despite the fact that it occurred during the pendency of the automatic stay.
Three considerations counsel strongly against Agati's position on this issue: (1) authority to the contrary within both the Second and Third Circuits; (2) the purpose and intent behind the automatic stay provisions of the Bankruptcy Act; and (3) the clear language and stated purpose of § 349.
First, Agati's position is inconsistent with the approach employed in the Second Circuit. The Bankruptcy Court for the Southern District of New York has held that the dismissal of a bankruptcy case does not, by itself, annul the automatic stay.In Re Eden Associates, 13 B.R. 578 (Bkrtcy. S.D.N.Y. 1981). InEden Associates, the court held that the foreclosure sale of the Chapter 11 debtor's property during the pendency of the automatic stay was null and void despite the fact that the bankruptcy case was subsequently dismissed. Id., 585. In reaching this conclusion, the court noted:
 Northwestern, aware of a claimed interest in the property asserted by the debtor in these bankruptcy proceedings and with knowledge that the petition had been filed, nevertheless proceeded with the foreclosure sale. . . . In proceeding with the sale in accordance with its perceived rights, it acted at its peril notwithstanding its ultimate vindication. CT Page 3054
Id.
Similar sentiments have been expressed in the Third Circuit by the Bankruptcy Court for the District of New Jersey. Matterof Cappadonna, 154 B.R. 639 (Bkrtcy. D.N.J. 1993). InCappadonna, the mortgagee bank allowed a final judgment of foreclosure to enter against the debtor during the pendency of a bankruptcy proceeding in clear violation of the automatic stay. Shortly thereafter, the debtor's Chapter 13 case was dismissed and the Superior Court of New Jersey retroactively reinstated the foreclosure proceeding. The debtor then filed a second Chapter 13 petition. In response, the mortgagee petitioned the bankruptcy court for relief from the automatic stay in order to continue the foreclosure proceeding. The court denied the motion, holding that both the original judgment of foreclosure and the subsequent order confirming that judgment were void ab initio. Id., 641. The court reasoned that "once the . . . judgment of foreclosure became void ab initio by virtue of the violation of the automatic stay, it was as if the entire foreclosure proceeding had never occurred. Consequently, there was nothing for the Superior Court judge to confirm nuncpro tunc . . ." Id. The court also noted that policy considerations strongly favored this outcome:
 To hold otherwise would result in the unwanted effect of rewarding creditors for violation of their automatic stay. Should the court allow a creditor, who . . . obtains judgment in violation of their automatic stay, to ratify that judgment once the debtor is outside of bankruptcy protection, what will stop all creditors from proceeding to judgment in violation of the stay? This would certainly defeat the purpose of the automatic stay, which is to afford protection to debtors and enable them to focus attention on their bankruptcy proceeding.
Id., 642.
In accordance with Eden Associates and Cappadonna, this court rejects Agati's argument regarding the effect of a bankruptcy dismissal. The dismissal of the bankruptcy proceeding, in no way effects the status of a void order. Although a dismissal of the bankruptcy action lifts the stay as to future actions, it in no way reinstates prior actions brought in violation of the automatic stay. CT Page 3055
This conclusion, moreover, is supported by public policy considerations. To hold otherwise would thwart the purpose and intent behind the automatic stay provisions of the Bankruptcy Act. The purpose of the automatic stay is to protect the debtor and to enable him to focus his attention on the bankruptcy proceeding. As noted by the court in Cappadonna, the adoption of Agati's position would defeat this purpose by rewarding creditors who proceed to judgment during the pendency of the automatic stay. As such, the adoption of this rationale would have the undesired effect of encouraging creditors to violate the automatic stay.
Finally, Agati's position is at odds with both the stated purpose and clear language of the dismissal provisions of the Bankruptcy Act. Section 349(b) provides in pertinent part that the dismissal of a bankruptcy case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case . . ." Thus, the clear language of § 349 evidences an intent to restore the rights of the parties to their status at the commencement of the proceedings. An examination of its legislative history, moreover, indicates that "[t]he basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to position in which they were found at the commencement of the case." H.R. Rep. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess., pp. 337-38 (1977). In contrast, the rationale behind Agati's argument would have this court reinstate a transaction which occurred after the filing of the bankruptcy petition. This adoption of this position, therefore, would make it impossible to return the rights of the parties to the position in which they were found at the commencement of the case.
Having concluded that the order was void and that the dismissal of the case did not reinstate the order, the final issue that this court must address is whether Michaud may be held in contempt for violating a void order. It is true, of course, that an order must be obeyed until it has been modified or successfully challenged. Bunche v. Bunche, 36 Conn. App. 322,650 A.2d 917 (1994). It is also true that there is no privilege to disobey the court's order because the alleged contemptor believes that it is invalid. Cologne v. WestfarmsAssociates, 197 Conn. 141, 496 A.2d 476 (1985). The facts of the present case, however, are distinguishable because they CT Page 3056 involve an order which was void ab initio. It is self-evident that a trial court may not hold an actor liable for violating a non-existent order. Calway v. Calway, 26 Conn. App. 737, 743,603 A.2d 434 (1992). Thus, if no prior court order exists, an actor cannot obey it, and, therefore, the trial court cannot hold the actor in contempt or noncompliance with a nonexisting order. Id. Likewise, the Superior Court has held that disobedience of a void order does not constitute contempt.Moran v. Anderson, 5 Conn. Sup. 285, 288 (1937).
In the present case, Agati seeks to hold Michaud liable for contempt because of his "violation" of a court order which was obtained in violation of the automatic stay. The preceding discussion demonstrates that this order was void from the outset and carries no legal force or effect now. Therefore, there is no existing order upon which to base a finding of contempt on the part of Michaud.
For the foregoing reasons, this court finds that the appointment of the receiver of rents was void ab initio and, therefore, cannot serve as the basis for a finding of contempt against Michaud. Accordingly, the motion for contempt is denied.
ZULAWIZ, J.