JACKS et v
VIRGINIA JOINT STOCK LAND BANK

Ohio Appeals, 2nd Dist, Montgomery Co

No 1258. Decided April 23, 1934

McMahon, Corwin, Landis & Markham, Dayton, for defendant in error.

SHERICK, J, (5th Dist) sitting by designation.

## OPINION

By SHERICK, J.

Before proceeding to a consideration of the merits of this matter, we would first dispose of a motion made to dismiss this cause by reason of plaintiff in error's failure to comply with Rule VIII of this court. In open court, the defendant in error complains of no disadvantage upon its part by reason of the delay of the plaintiff in error and both parties have placed this court in possession of the authorities upon which they rely. There being no apparent harm to be sustained by the defendant in error if this motion be overruled, it is the judgment of this court in respect thereto that the motion be denied.

The pertinent facts necessary to an understanding of the question presented are as follows: Mary E. and Edward Jacks obtained a loan of the Land Bank and as security for this loan executed and delivered to it their mortgage on certain farm premises. This mortgage not only purported to cover the real estate, but also the "rents and profits" thereof. Thereafter on September 13, 1932, the Land Bank commenced a proceeding against the Jacks and also one Ross, who had purchased the premises and assumed the mortgage. On the same day that the suit was instituted, Rowan A.

Daniel L. Dwyer, Dayton, for plaintiffs in error.

Greer was appointed receiver for the purpose of collecting and holding the rents and profits.

It appears that on July 9, 1932, Ross was indebted to Dwyer in a considerable sum and that to secure this debt he executed and delivered to him his promissory note. On the day noted, he also executed and delivered an assignment of the crop of tobacco and corn then growing on the premises. An examination of this instrument clearly indicates that it was not intended as a mere security of this note, but was in fact an outright sale of these growing crops, but it was understood that the purchase price received from these crops, when sold, was to be applied as a credit upon the note. This purpose and intent is plainly indicated by the last two lines of the assignment which reads as follows:

"Said indebtedness in the amount realized in the sale of said crops so sold shall not bear interest."

It further appears that while the receiver was in possession of the premises, that Dwyer caused his note to be put in judgment and an execution issued thereon, and that the sheriff pursuant to its commands levied upon these two growing crops as well as other articles of personal property. The claim is now made by the plaintiff in error that he is entitled to the owner's share of these two crops produced within the year 1932 upon two theories.

(1) As the purchaser from and assignee of the owner prior to the instigation of the foreclosure proceedings.

(2) By virtue of the lien obtained by his judgment and the execution and levy thereon made.

We would first consider the second claim. We reach the conclusion with unhesitating dispatch that there is no merit therein. We are told that the purpose of this execution was to reach other chattels, but be that fact as it may, we know of no rule of law which permits a levy by an executing officer upon money or property in a custodia legis, and by virtue of this execution and levy the plaintiff in error can not be advantaged. Neither did its issuance act as a waiver of such rights possessed by him as assignee; for waiver is only the voluntary relinquishment of a known right.

And now considering the matter of priority existing between the mortgagee and the plaintiff in error as assignee of these crops. Our search discloses that numerous authorities have considered the proposition as to whether or not a mortgagee is entitled to growing crops under a phrase in his mortgage which reads, "rents and profits". We find it to be generally accepted as the rule that a mortgagee is not so entitled as against an intervening third person until such time as the mortgagee shall have exercised dominion thereover by having taken possession of the premises; or performed some act on his part compatible with his claimed right thereto.

We are inclined, however, to go a bit further in the matter of considering the right of a mortgagee to take such personal property even as against the mortgagor. An interesting case is to be found in that of Farmers Bank v Kriegel, 196 Iowa, 833. Therein it is held that:

"The phrase 'uses and profits' has its pertinent place in a conveyance of real estate, whether by deed or mortgage. As such, it is descriptive of the necessary incidents of the ownership and possession of real estate. It does not necessarily imply any reference to personal property.—The language is not such as would apprise a mortgagor that he was executing a chattel mortgage as well as a real estate mortgage. To so construe this instrument would be to introduce into it an element of stealth, and to impose upon the mortgagor a contractual obligation of which he was himself unconscious; because only an astute mind could see the susceptibility of this instrument to such a construction."

It appeals to us that it would have been a very simple matter had it been intended that this mortgage was to include a mortgage upon the growing crops for the word "crops" might easily have been inserted. It is well settled in this state that crops which may be raised within the year are personalty and not realty. It is also provided by the law of Ohio with what solemnity a mortgage on chattels must be executed and it is provided that chattel mortgages shall be filed in the office of the County Recorder. The mortgagee Bank, did not file its mortgage as a chattel mortgage, and as said in the case of Simpson v Ferguson, 112 Cal., 180, 40 Pac., 104, a mortgage clause conveying real estate together with "the rents, issues and profits thereof" does not give the mortgagee a lien on crops growing thereon where the mortgage is not executed with the formalities required by statute for a mortgage of growing crops and such language might be quoted as a concise and accurate statement of the law of this state in respect thereto.

It might here be further stated that courts of other jurisdictions in considering similar questions, irrespective of statute, have reasoned upon the theory that the production of crops is not entirely dependent upon the land itself, and approach the subject with this thought in mind that in many instances the major cost of the production of a crop is the labor incident to its production and to consider that a mortgagor intended to convey growing crops on his premises as purely an incident to the soil is incorrect in view of the fact that its production is, in the main, the fruit of his own toil and that such language in a mortgage, as we find in this case, should not be enlarged and a new contract made as between mortgagors and mortgagees. A worthwhile note on the subject before us is to be found in 4 A.L.R., 1410. Therein reference is made to the case of Caldwell v Alsop, 48 Kan, 571, 17 L.R.A. 782, 29 Pac., 1150, which is practically upon all fours with the present controversy. In this case, the owner of mortgaged land leased the same to another and reserved as rent a share in the crops. He was in default for payment of the mortgage debt and was insolvent. After the default and after the leasing of the premises, before the institution of the action in foreclosure, he sold his share of the crop rent to one who had notice of the mortgage and of his default. After the crop had fully matured, but while it was standing on the land, foreclosure proceedings were begun and a receiver appointed. The question was made as to the right of the receiver to hold the landlord's share of the crop, as against the purchaser who purchased the crop prior to the mortgagees asserting a right thereto. It was decided that the receiver had no right thereto as against the purchaser.

It is the judgment of this court that this cause be reversed and remanded for further proceedings in conformity to the views herein expressed.

HORNBECK, PJ, and BARNES, J, concur.