In re SAM A. TISCI, INC., Debtor.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF TOLEDO, Plaintiff,**

v.

**John J. HUNTER, Trustee, Defendant.**

Bankruptcy No. 89–0061.
No. 87–00586.

United States Bankruptcy Court, N.D. Ohio, W.D.

Jan. 10, 1991.

Gregory Sova, Toledo, Ohio, for plaintiff.

John J. Hunter, Toledo, Ohio, Trustee.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on Plaintiff's Complaint requesting that the Court determine that the Plaintiff has a valid security agreement covering rentals and income from certain mortgaged property which the Defendant has been holding as Trustee in Bankruptcy and that the Defendant be compelled to turn over said rentals and income. A pre–trial was held at which time the parties decided to have the Court determine the issue based on the written arguments of counsel. The Plaintiff filed a Motion for Summary Judgment and Memorandum in Support. The Defendant filed a Response. The Court has reviewed the written arguments of counsel, the relevant case law, as well as the entire record in this case. Based upon that review, and for the following reasons, the Court finds that the Plaintiff's Motion for Summary Judgment should be Granted and the Trustee should be compelled to turn over certain portions of the rental income.

## FACTS

The facts are undisputed. Between April 4, 1979, and August 30, 1985, the Debtor, Sam A. Tisci, Inc., executed sixteen (16) mortgages on certain real property thereby conveying to the Plaintiff, First Federal Savings and Loan Association of Toledo (First Federal), an interest in the parcels. First Federal properly recorded each mortgage between April 6, 1979, and September 3, 1985.

The Debtor filed a Chapter 11 Bankruptcy petition on March 25, 1987. Subsequently, on September 15, 1988, the Court ordered a conversion to a Chapter 7 proceeding and John J. Hunter was appointed Trustee of the estate. Mr. Hunter, as Trustee, is the Defendant in this adversary proceeding. At the time the Chapter 7 Order was entered, Thirteen· (13) of the Sixteen (16) mortgages were in default.

The Plaintiff filed a Motion for Relief from Stay to allow a state foreclosure action. On November 23, 1988, the Court granted the Motion; and on November 29, 1988, Plaintiff filed its complaint for foreclosure of the mortgages. On November 30, 1988, the receiver, Thomas E. Weisenburger, was appointed by the state court.

Between September 15, 1988, and November 30, 1988, the Defendant collected the rentals and income from the property of the Debtor which were subject to the Plaintiff's mortgage. The Defendant did not remit these collections to the Plaintiff. Although the Defendant is not currently collecting income on the property, the record is not clear as to when the Defendant ceased collecting rentals or paying the expenses in connection with these properties.

On April 20, 1989, the Plaintiff filed its Complaint requesting turnover of the collections by the Defendant. The Defendant

admits that he did collect the rentals, but contends that First Federal is not entitled to them because it failed to perfect its security interest. The issue presented to the Court is whether appointment of a receiver during Bankruptcy perfects a pre-petition security interest. For the following reasons, the Court finds that in this case the post-petition appointment of a receiver does perfect such security interest.

## LAW

Summary Judgment is properly granted when the Movant can demonstrate that there are no genuine issues of material fact, and that they are entitled to judgment as a matter of law. *See* Bankruptcy Rule 7056 and Fed.R.Civ.P. 56. The Movant must be able to demonstrate all the elements of a cause of action in order to prevail. *In re Jasin,* 80 B.R. 418, 419 (Bankr.N.D.Ohio, W.D.1987). A Motion for Summary Judgment must be construed in the light most favorable to the party opposing the Motion. *In re Weitzel,* 72 B.R. 253, 256 (Bankr.N.D.Ohio, W.D.1987).

In the case at bar, First Federal made the Motion for Summary Judgment. First Federal contends that it has a perfected security interest and a right to the income under Sections 363(a) and 552(b) of the Bankruptcy Code.

Section 363(a) defines "cash collateral" to mean "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, *rents,* or *profits* of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title." 11 U.S.C. § 363(a) (emphasis added).

Section 552(b) of the Bankruptcy Code provides, in pertinent part, that

[I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b).

There are two requirements that the Plaintiff must satisfy in order to obtain the income from the mortgaged property in accordance with Section 552(b). The first requirement is that a pre-petition security agreement must exist between the Plaintiff and the Debtor; the second is that the security interest must be perfected. The Court must look to state law to determine whether First Federal had the requisite security interest in the income and whether the security interest in the income was perfected. *Butner v. United States,* 440 U.S. 48, 55–57, 99 S.Ct. 914, 918–19, 59 L.Ed.2d 136 (1979).

This Court believes that the first requirement has been met. First Federal's claim to the rentals and income stem from the mortgages themselves. Paragraph Nine (9) of each mortgage agreement confers upon First Federal a right to the rentals and income in the event of default. That paragraph provides that "[u]pon default in any of the terms of the note secured hereby, or upon any breach of any condition or covenant of this deed, all rentals or income from the real estate hereinabove described shall become payable immediately when due to [First Federal], who is authorized and empowered to collect the same." Each document was in writing, contained a description of the collateral and subsequently signed by the Debtor; therefore the mortgages are valid security agreements. *See* Ohio Rev.Code § 1309.14 (Baldwin 1988). All of the mortgages were recorded. Consequently, the first requirement of Section 552(b) is satisfied, *i.e.,* pre-petition security agreements exist which

specifically provide for an interest in the rentals and income.

■ The second requirement to be resolved is whether First Federal perfected its interest in the income from the property. This Court must again look to state law for this determination. *Butner*, 440 U.S. at 55–57, 99 S.Ct. at 918–19. The Court notes that the case at bar concerns itself with perfection of the interest in the income from the mortgaged property as opposed to perfection of the mortgage instrument. A mortgagee can perfect an interest in the rentals and income from mortgaged property in one of two ways: (1) obtain possession, or the right thereto, or (2) have a receiver appointed. *Jacks v. Virginia Joint Stockland Bank*, 17 Ohio Law Abs. 464, 466 (1934).

■ For a mortgagee to obtain the right to possession, the mortgagor must have defaulted on the terms of the mortgage. *Metropolitan Securities Co. v. Orlow*, 107 Ohio St. 583, 588, 140 N.E. 306 (1923). Moreover, the mortgage agreement itself must pledge the rents to secure the mortgage upon default, except in situations whereby the mortgagee is prevented from taking possession of the property. *Banc-Ohio National Bank v. Andrew J. Haas Irrevocable Trust*, 515 N.E.2d 1024, 1025–26, 33 Ohio App.3d 253, 254 (1986); *Hutchinson v. Straub*, 60 N.E. 602, 64 Ohio St. 413 (1901). Such a situation would be when property passes into the jurisdiction of a probate court.

Alternatively, to perfect an interest, the mortgagee could have a receiver appointed by the court, thus placing the collection of the rents within the purview of the court's jurisdiction. *Id.* O.R.C. section 2735.01 entitles a mortgagee to have a receiver appointed. Before such appointment, O.R.C. section 2735.01 requires that the mortgagee demonstrate that the mortgaged property is in danger of being lost, removed, or materially injured or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the debt. Therefore, in Ohio, a mortgagee perfects its interest when it either appropriately acquires actual possession of the property or acquires the appointment of a receiver.

■ First Federal asserts that it perfected its interest because a receiver was appointed by the state court which thereby prevented it from acquiring actual possession. The Court agrees and holds that the Plaintiff is entitled to the rentals and income from November 30, 1988, to present. Despite the appointment of the receiver, the Court also finds that First Federal perfected its interest because it properly obtained possession of the mortgaged property. Thirteen (13) mortgages were in default. The mortgage agreement pledged the rents as security. Thus, in accordance with *Metropolitan Securities* and *Banc-Ohio National Bank*, the Plaintiff had the right to possession, and perfected its interest in the rentals and income.

■ Having determined that First Federal is to receive the rentals and income from November 30, 1988, to the present, the Court is now compelled to discuss whether First Federal is entitled to the income collected (1) between the time the petition was filed and the relief from stay was granted and (2) between the time relief from stay was granted and the receiver was appointed. The Trustee was appointed on September 15, 1988, and Relief from Stay was granted on November 23, 1988. In accordance with the Relief from Stay Order, the Plaintiff's Motion to Abandon the real estate was withdrawn. Hence, the Trustee did not relinquish the real estate. On the contrary, the real property remained property of the estate. *See* 11 U.S.C. § 554(d). Therefore, for the period between the time the petition was filed and the relief from stay was granted, the Trustee is entitled to the rentals and income. Turning attention to the second time frame, the Court recognizes that First Federal has an equitable lien on the rentals and income; perfection of which relates back to the time the mortgage was executed.

An equitable lien is a mere floating equity until a judgment or decree subjecting the property to the payment of a debt or

claim is rendered, but even though not judicially recognized until a judgment declaring its existence, it relates back to the time it was created by the conduct of the parties.

51 Am.Jur.2d *Liens* § 22 (1970); *Virginia Beach Federal Savings and Loan Association v. Wood,* 901 F.2d 849, 853 (10th Cir. 1990).

However, the *entitlement* to the rentals and income only relates back to the appointment of the receiver because this is the time in which First Federal had the right of possession. Although the mortgages were in default, First Federal could not collect the income until a receiver was appointed in the foreclosure action to take possession of the rents. *See Norwood Savings Bank v. Romer,* 43 Ohio App. 224, 12 Ohio Law Abs. 472, 183 N.E. 45 (1932). In light of this, First Federal is only entitled to the rentals after the appointment of the receiver and the Trustee can retain that income collected prior to the appointment of the receiver.

The Court finds that the Plaintiff has the best lien as between the Plaintiff and the Defendant. Since the Defendant has been collecting the rentals, he must turn over any rents collected after November 30, 1988, to the Plaintiff. The Defendant may retain those amounts collected prior to that date.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that Plaintiff's Motion for Summary Judgment be, and is hereby, Granted.

It is FURTHER ORDERED that the Trustee account for all rentals and income which he collected and that he remit those amounts collected after November 30, 1988, to the Plaintiff.