In re SAM A. TISCI, INC., Debtor.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF TOLEDO, Plaintiff,**

v.

**John J. HUNTER, Trustee, Defendant.**

**No. 3:91CV7063.**

United States District Court, N.D. Ohio, W.D.

Nov. 20, 1991.

---

Thomas W. Heintschel, Frederickson & Heintschel, Toledo, Ohio, for plaintiff.

John J. Hunter, Jr., Hunter & Schank, Toledo, Ohio, for defendant.

## OPINION AND ORDER

WALINSKI, Senior District Judge.

This action is before the Court on plaintiff First Federal Savings and Loan Association of Toledo's ("First Federal") appeal from the January 10, 1991 order of the Bankruptcy Court granting their motion for summary judgment. 124 B.R. 46. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a) and has conducted a review in accordance with *In re Caldwell*, 851 F.2d 852 (6th Cir.1988).

The facts in this case are undisputed. Between April 4, 1979, and August 30, 1985, the debtor, Sam A. Tisci, Inc. ("Tisci"), executed sixteen mortgages on certain real estate which conveyed an interest in the parcels to First Federal. Tisci filed a Chapter 11 bankruptcy petition on March 25, 1987; on September 15, 1988, the Bankruptcy Court ordered it converted to a Chapter 7 proceeding and appointed John J. Hunter ("Hunter"), the defendant in this adversary proceeding, as trustee of the bankruptcy estate. Thirteen of the sixteen mortgages were in default when this action was converted to a Chapter 7 proceeding.

On October 7, 1988, First Federal filed a motion for abandonment of the property and relief from stay to allow a state foreclosure action. On November 23, 1988, the Bankruptcy Court granted the motion for relief from stay and First Federal agreed to withdraw its application for abandonment. First Federal filed its complaint for foreclosure of the mortgages in state court on November 29, 1988 and on November 30, 1988, a receiver was appointed.

Since Hunter was appointed as trustee on September 15, 1988, he has collected the rental income from Tisci's property that is encumbered by First Federal's mortgages. First Federal demanded that Hunter turn over this income. He refused to do so and First Federal filed this adversary action on April 20, 1989, requesting a declaration that First Federal had a prior perfected lien on those rents and an order compelling Hunter to turn over the rental income he had collected.

The Bankruptcy Court held that, although a valid security agreement existed between First Federal and Tisci, First Federal's security interest in the rental income was not perfected under Ohio law until November 30, 1988 because First Federal failed to either acquire actual possession of the mortgaged property or appoint a receiver to collect the rental income prior to that date. Therefore, the Bankruptcy

Court held that First Federal was only entitled to the rental income collected by Hunter after the receiver was appointed on November 30, 1988. Hunter was allowed to retain the income collected prior to that time.

Because the facts are not in dispute, this Court shall review the record and decide whether the legal conclusions set forth by the Bankruptcy Judge are correct. *See In re Caldwell, supra.*

First Federal argues that the Bankruptcy Court erred in holding that its security interest in the rents was not perfected pursuant to 11 U.S.C. § 363(a)[1] and § 552(b)[2] from the time Hunter was appointed as trustee on September 15, 1988 to the time the state court appointed a receiver on November 30, 1988.

■ First Federal's property rights in the rents collected by Hunter are governed by state law, even though the mortgagor is in bankruptcy. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); 11 U.S.C. § 552(b). In Ohio:

A mortgage of real property does not per se operate as a specific pledge of the rents and profits therefrom. To have that effect the mortgage must expressly include them. But even though a mortgage contains a pledge of rents and profits, and even though the condition is broken, the mortgagor is entitled to them so long as he retains possession. To be entitled to the rents and profits specifically pledged, the mortgagee must have taken possession of the premises or must have taken some action, such as the appointment of a receiver to reduce the rents and profits to possession. Where, however, a mortgagee is prevented from taking possession because the estate of the mortgagor has passed into the jurisdiction of the court, ... the mortgagee will, nevertheless, be entitled to the pledged rents and profits collected by the officer of the court, when necessary to fully pay the obligation secured by the mortgage.

*Matter of Pfleiderer*, 123 B.R. 768, 769 (Bankr.N.D.Ohio 1987) (citations omitted).

■ 11 U.S.C. § 541 provides that the commencement of a case under §§ 301, 302, or 303 creates an estate which, in general, is comprised of all legal and equitable interests of the debtor in property as of the commencement of the case. Furthermore, the automatic stay provision, 11 U.S.C. § 362(a)[3], prohibits a mortgagee from obtaining either possession of the mortgaged property or the appointment of a receiver to collect the rents therefrom without first requesting the bankruptcy court to grant relief from stay under 11 U.S.C. § 362(d). An automatic stay takes effect upon the filing of a petition in bankruptcy and precludes certain actions against a debtor such as all collection efforts and foreclosure actions. *Matter of Colonial Realty Co.*, 122 B.R. 1 (Bankr. D.Conn.1990), *Bank of Commonwealth v. Bevan*, 13 B.R. 989 (E.D.Mich.1981). Finally, "the enforcement of a secured creditor's interest in the rents by declaring the mortgagee to be entitled to the rents collected after a certain date when the mortgagee

---

1.  11 U.S.C. § 363(a) defines "cash collateral" as: cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

2.  11 U.S.C. § 552(b) provides, in pertinent part: if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law....

3.  11 U.S.C. § 362(a) provides, in pertinent part: a petition filed under section 301, 302, or 303 of this title, ..., operates as a stay, applicable to all entities, of ... (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate.

would have been able to enforce that interest in state court but for the automatic stay is a proper exercise of bankruptcy jurisdiction." *In re Park At Dash Point L.P.*, 121 B.R. 850, 860 (Bankr.W.D.Wash. 1990).

 First Federal had the right, by virtue of paragraph nine of each mortgage agreement, to the rental income from the mortgaged properties in the event of default. First Federal was prevented from either taking possession of the mortgaged properties or having a receiver appointed to collect the rental income because those properties had passed into the exclusive jurisdiction of the bankruptcy court. *See Matter of Pfleiderer*, 123 B.R. 768 (Bankr. N.D. Ohio 1987); *Hutchinson v. Straub*, 64 Ohio St. 413, 60 N.E. 602 (1901); *In re Cordesman–Rechtin Co.*, 66 Ohio App. 25, 31 N.E.2d 472 (1940).

Like the mortgagee in *Pfleiderer*, First Federal was unable to institute foreclosure proceedings until relief from stay was granted by the Bankruptcy Court. *Pfleiderer*, 123 B.R. at 769. *Pfleiderer* also involved a chapter 7 bankruptcy wherein the mortgagee filed a motion for relief from stay and was granted authority to institute state foreclosure proceedings. Prior to the foreclosure judgment, the trustee in *Pfleiderer* collected the rents from the mortgaged properties. The mortgage, as in the case *sub judice*, contained a clause providing that all rents and profits were assigned to the mortgagee to secure the debt. The bankruptcy court granted the mortgagee's motion for an accounting and ordered the trustee to pay over the rents collected. *Id.* at 770.

First Federal was clearly entitled to the rental income from the mortgaged properties and could have enforced this right in state court. It was prevented from doing so by the automatic stay imposed when Tisci filed for bankruptcy. This Court agrees with the rationale of *Pfleiderer* and concludes that First Federal is entitled to the rental income collected by Hunter.

Hunter argues that he is entitled to all reasonable expenses including commissions from the rents collected. However, this issue is remanded to the Bankruptcy Court.

Accordingly, it is

ORDERED that First Federal's motion for oral argument is denied.

FURTHER ORDERED that the January 10, 1991 order of the Bankruptcy Court is reversed and remanded with instructions to enter an order consistent with this opinion.