In re LEASE–SEA, INC., dba Anchor Pointe Yacht Sales, Debtor.

Bankruptcy No. 90–00862.

United States Bankruptcy Court, N.D. Ohio, W.D.

March 13, 1992.

See also 140 B.R. 182.

Raymond L. Beebe, Toledo, Ohio, for debtor.

Elizabeth A. Vaughan, Toledo, Ohio, trustee.

David Wicklund, Toledo, Ohio, for First Federal Sav. & Loan.

Jane L. Lackey, Toledo, Ohio, for trustee.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon Resolution Trust Corporation's Motion for Abandonment of Cash Collateral and Relief from Stay. The Court held a Hearing on the matter, at which time the parties presented the evidence and arguments they wished the Court to consider in reaching its decision. At the conclusion of the Hearing, the Court ordered that post-Hearing Briefs be filed on the matter. The Court has reviewed the evidence and arguments presented, the post-Hearing Briefs, as well as the entire record in this case. Based upon that review and for the following reasons, the Court finds that Resolution Trust Corporation's Motion should be granted, in part, and denied, in part.

## ISSUE I: CASH COLLATERAL

### A. FACTS

This portion of the Opinion dealing with the Motion of Resolution Trust Corporation [hereinafter "RTC"], receiver of First Federal Savings and Loan Association of Toledo, concerns itself with the issue of whether the rental income collected from the lease of boat slips owned by Lease–Sea, Inc. [hereinafter "Lease–Sea"], the Debtor, which are subject to RTC's mortgage constituted cash collateral; and if so, whether said income should be turned over to RTC.

In June 1987, RTC made three separate loans to Great Lakes Builders, Inc. These loans totaled Two Million Eight Hundred Fifty Thousand Dollars ($2,850,000.00). Contemporaneously therewith, the titled owner to the premises, Port Lawrence Title and Trust Company, as Trustee, executed and delivered to RTC three separate mortgages to secure the payment of the loans.

In March 1988, Lease–Sea assumed all three mortgages and payment obligations. By August 1989, all three mortgages were in default. In February 1990, RTC instituted a foreclosure action against Lease–Sea. On March 11, 1990, Barry E. Savage was appointed receiver. On March 16, 1990, Lease–Sea filed for Bankruptcy under Chapter 11. The case was converted to one under Chapter 7 on July 30, 1990. At the time of conversion, there was approximately Twenty-four Thousand Dollars ($24,000.00) in a cash collateral account which had been established by the debtor-in-possession as the depository for this rental income during the Chapter 11. Elizabeth Vaughan, as Trustee in Bankruptcy [hereinafter "Trustee"], objected to the payment of this cash collateral to RTC.

### B. LAW

Section 363(a) of the Bankruptcy Code defines "cash collateral" to mean "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, *rents,* or *profits* of

property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title." 11 U.S.C. § 363(a) (emphasis added).

Section 552(b) of the Bankruptcy Code provides, in pertinent part, that

> [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b).

■ There are two requirements that the Plaintiff must satisfy in order to obtain the income from the mortgaged property in accordance with Section 552(b). The first requirement is that a pre-petition security agreement must exist between the Plaintiff and the Debtor; the second is that the security interest must be perfected. The Court must look to state law to determine whether First Federal had the requisite security interest in the income and whether the security interest in the income was perfected. *Butner v. United States*, 440 U.S. 48, 55–57, 99 S.Ct. 914, 918–19, 59 L.Ed.2d 136 (1979).

■ This Court believes that the first requirement has been met. RTC's claim to the rentals and income stem from the mortgages themselves. Paragraph Nine (9) of each mortgage agreement confers upon RTC a right to the rentals and income in the event of default. That paragraph provides that "[u]pon default in any of the terms of the note secured hereby, or upon any breach of any condition or covenant of this deed, all rentals or income from the real estate hereinbefore described shall be-

come payable immediately when due to [RTC], who is authorized and empowered to collect the same." Consequently, the first requirement of Section 552(b) is satisfied, *i.e.*, pre-petition security agreements exist which specifically provide for an interest in the rentals and income.

■ The second requirement to be resolved is whether RTC perfected its interest in the income from the property. This Court must again look to state law for this determination. *Butner*, 440 U.S. at 55–57, 99 S.Ct. at 918–19. The Court notes that the case at bar concerns itself with perfection of the interest in the income from the mortgaged property as opposed to perfection of the mortgage instrument. A mortgagee can perfect an interest in the rentals and income from mortgaged property in one of two ways: (1) obtain possession, or the right thereto, or (2) have a receiver appointed. *Jacks v. Virginia Joint Stock Land Bank*, 17 Ohio Law Abs. 464, 466 (1934).

■ For a mortgagee to obtain the right to possession, the mortgagor must have defaulted on the terms of the mortgage. *Metropolitan Securities Co. v. Orlow*, 107 Ohio St. 583, 588, 140 N.E. 306, 308 (1923). Moreover, the mortgage agreement itself must pledge the rents to secure the mortgage upon default, except in situations whereby the mortgagee is prevented from taking possession of the property. *Banc-Ohio National Bank v. Andrew J. Haas Irrevocable Trust*, 33 Ohio App.3d 253, 254, 515 N.E.2d 1024, 1025–26 (1986); *Hutchinson v. Straub*, 64 Ohio St. 413, 60 N.E. 602 (1901). Such a situation, for example, would be when property passes into the jurisdiction of a probate court.

The second way to perfect an interest is for the mortgagee to have a receiver appointed by the court, thus placing the collection of the rents within the purview of the court's jurisdiction. *Id.* O.R.C. Section 2735.01 entitles a mortgagee to have a receiver appointed. Before such appointment, O.R.C. Section 2735.01 requires that the mortgagee demonstrate that the mortgaged property is in danger of being lost,

removed, or materially injured or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the debt. Therefore, in Ohio, a mortgagee perfects its interest when it either appropriately acquires actual possession of the property or acquires the appointment of a receiver.

■ RTC asserts that it perfected its interest under both methods. Under the terms of the mortgages, RTC had the right to obtain possession when the Debtor defaulted on its payments. Also, RTC had a receiver appointed on March 11, 1990, to protect its interests. The Court agrees and holds that the Plaintiff is entitled to the rentals and income placed in the cash collateral account.

## ISSUE II: OTHER ITEMS

### A. FACTS

This portion of the Opinion deals with RTC's Motion for Abandonment and Relief from Stay in connection with certain boats and vehicles which were in the possession of Lease–Sea before the case was converted to one under Chapter 7. Each item will be discussed individually. For clarity, though, these items are as follows:

1. 1975 Aluminum Hard Top Sedan
2. 1987 Cobalt
3. 1988 Sunrunner
4. 1986 Sunrunner
5. 1987 Starfire and trailer
6. 1988 Sunrunner
7. 1987 IMP
8. 1978 Bertram
9. 1985 Chris Craft Stinger
10. 1988 Jefferson Monticello

ITEMS # 1–7

These items were collateral on two "repo" floor plan lines of credit between RTC and Lease–Sea. Between May and October 1988, Lease–Sea granted RTC a security interest in all the boats which had been purchased by the Debtor with funds advanced by RTC. RTC had new titles issued to Lease–Sea, but RTC retained possession of these titles.

On January 2, 1990, RTC had its liens noted on the certificates of title by the Clerk of Courts of Lucas County, Ohio. On March 16, 1990, Lease–Sea filed for relief under the Bankruptcy Code. RTC argues that their liens are perfected because it retained possession of the certificates of title despite notice not being placed on the certificates of title until January 2, 1990. The Trustee contends that RTC is not perfected because they did not comply with Section 1309.21 of the Ohio Revised Code.

O.R.C. Section 1309.21 provides rules as to when filing is required to perfect a security interest. Subsection (C)(2) of that Section states as follows:

(C) The *filing* of a financing statement otherwise required by sections 1309.01 to 1309.50 of the Revised Code *is not* necessary or *effective* to perfect a security interest in property subject to:

(2) The following statutes of this state: ... [section] 1548.20 [Watercraft Certificates of Title].…

Ohio Rev.Code Ann. § 1309.21(C)(2) (emphasis added).

■ Section 1548.20, The Watercraft Certificates of Title Act governs the issuance of certificates of title to watercraft and outboard motors and the perfection of security interest therein. That Section provides, in pertinent part, that

Any security agreement covering a security interest in watercraft ..., if such instrument is accompanied by delivery of a manufacturer's or importer's certificate and followed by actual and continued possession of such certificate by the holder of said instrument, or, in the case of a certificate of title, if a notation of such instrument has been made by the clerk of court of common pleas on the face of such certificate, shall be valid as against the creditors of the debtor ... and against subsequent purchasers, secured parties, and other lienholders or claimants.

Ohio Rev.Code Ann. § 1548.20. Certificates of title were issued for the boats in question. RTC advanced money in 1988,

but did not cause the agreement to be noted on the face of the certificate of title by the clerk of courts until January 2, 1990. The Debtor filed for Bankruptcy on March 16, 1990. Clearly, the notation of the liens on the certificates of title occurred during the 90–day preference period causing this transaction to be avoided by the Trustee. *See* 11 U.S.C. § 547.

■ However, RTC argued that notation on the certificate of title was not the sole means of perfecting a security interest in watercraft. RTC contended that possession of the certificate of title constituted perfection under O.R.C. § 1309.24. RTC asserted that a certificate of title was a document which represented the right to the goods and thus possession was the permissible means of perfection. The Court disagrees with this position.

The Common Pleas Clerk issues certificates of title in triplicate: one copy remains with the clerk, a second copy is transmitted to the chief of the division of watercraft, and the third copy goes either to the applicant or the first lienholder. Ohio Rev.Code Ann. § 1548.09. Liens are to be recorded on all three copies. Ohio Rev.Code Ann. § 1548.20. The whole purpose of recording of liens is notice. This Court is at a loss as to how possession of the certificate of title, in light of Section 1548.09, would place other parties on notice of a lien on the watercraft. RTC is attempting to equate certificates of title with bills of lading or warehouse receipts. They are not the same. The Drafters of the Ohio Revised Code made special provisions for automobiles and watercraft and security interest therein. This Court is not willing to sculpt out an exception which goes against the grain of the notice requirement in commercial law. RTC argued that the notice requirement had been met, as any party wishing to purchase a boat would have to have the certificate of title assigned to that party by RTC or risk having that interest not recognized. *See,* Ohio Rev.Code Ann. § 1548.04. This argument is circuitous because how would a party request to have RTC assign the certificate of title, if the party had searched the records at the courthouse and found no notation by RTC

of its lien. Fraud does happen and an unscrupulous boat salesperson may sell the boat without the proper title, which would cause the mass confusion that the Watercraft Certificates of Title Act and the Uniform Commercial Code were enacted to prevent.

■ The Ohio legislature chose to craft special statutes to be applied in determining ownership and lien priority on watercraft. This Court is bound to follow those sections of the Ohio Revised Code, as they are applicable to this case. Therefore, the Watercraft Certificates of Title Act prevails over the Uniform Commercial Code in determining who has a valid lien on the boats. RTC may have had a valid argument if had they retained possession of the manufacturer's certificates, as Section 1548.20 gives those in possession of the manufacturer's certificates priority over all other claimants. Accordingly, this Court finds that items 1–7 are property of the Debtor. In making this finding, the Court is not passing on the validity of RTC's liens, but rather, is only finding the Trustee has a right superior to that of RTC on the boats.

ITEM # 8

Item number 8 is the 1978 28–foot Bertram. The Court is unable to make a determination as to who owns this boat. RTC's pleadings contain unsubstantiated allegations that this boat was a trade-in for a 1977 33–foot Bertram, which was on the regular floor plan. RTC alleged that item number 8 constituted proceeds of the sale of a secured collateral. The Trustee allegations were to the contrary. The Court will need an evidentiary hearing on this matter.

ITEM # 9

Item number 9 is the 1985 Chris Craft Stinger. The Court is unable to make a determination as to who, if anyone, owns this boat and who, if anyone, has a valid lien. The documentation submitted by the parties is incomplete. The documents reflect that (1) RTC obtained a certificate of documentation in 1987; and (2) Mike Had-

dad assigned the certificate of title in blank in 1988, but that the certificate of title reflects that Sand Castle Marine, Inc. was the previous owner. However, the certificate of title submitted by the Trustee lacks Mr. Haddad's assignment in blank. The Court will need to set a further evidentiary hearing on this matter.

ITEM # 10

██ Item number 10 is the 1988 52–foot Jefferson Monticello. The manufacturer's statement of origin reflects that Banner Yachts, Inc. assigned this item to Justice, Inc. on January 2, 1988. The parties agreed that this boat was traded-in on a larger model and was placed on the floor-plan arrangement when RTC advanced funds for the trade-in. A preferred mortgage on behalf of RTC was filed on January 1, 1989. However, title remained in the name of Justice, Inc. on the certificate of documentation. In accordance with Section 1548.20 of the Ohio Watercraft Title Act, this Court finds that title is in the name of Justice, Inc. The Court further finds that the Debtor has no interest in the boat and that this Court is not the proper court in which to determine whether RTC has a lien due to the execution of its preferred mortgage.

The Trustee has stated that the items listed in Exhibit A (attached) were never an asset of the Debtor. RTC did not contest this assertion. Therefore, having no evidence to the contrary, the Court finds that the items listed in Exhibit A should be abandoned.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that the Trustee account for all rentals and income which were collected and placed in the cash collateral account and that she remit those amounts to the Resolution Trust Corporation, within Twenty-one (21) days from the date of this Order.

It is FURTHER ORDERED that the following be, and are hereby, declared property of the estate:

1. 1975 Aluminum Hard Top Sedan
2. 1987 Cobalt
3. 1988 Sunrunner
4. 1986 Sunrunner
5. 1987 Starfire and Trailer
6. 1988 Sunrunner
7. 1987 IMP

It is FURTHER ORDERED that the Resolution Trust Corporation's attempt to perfect their liens on the seven items listed above constituted voidable preferences under Section 547 of the Bankruptcy Code.

It is FURTHER ORDERED that the items listed in Exhibit A be, and are hereby, abandoned from the estate.

EXHIBIT A
4. MART PETTY PROPERTY PLACED ON THE REGULAR FLOOR PLAN

| NUMBER | YEAR | DESCRIPTION | MODEL | SERIAL NUMBER | FLOORED AMT. | WHOLESALE | RETAIL |
|---|---|---|---|---|---|---|---|
| 30 | 1979 | Chevrolet W/Plow | C–20 | | 3,500.00 | 2,245.00 | 2,875.00 |
| 31 | 1986 | Searay | 390 | SERF7323E686 | 139,000.00 | 90,000.00 | 118,000.00 |

ITEMS 32 THROUGH 46 will not have a current value due to insufficient information received at the time of the floor plan.

| NUMBER | YEAR | DESCRIPTION | MODEL | SERIAL NUMBER | FLOORED AMT. | WHOLESALE | RETAIL |
|---|---|---|---|---|---|---|---|
| 32 | | Clinton Work Boat | | 5255–20–576 | 9,000.00 | n/a | n/a |
| 33 | | International Tractor | 2404 | | 6,000.00 | n/a | n/a |
| 34 | | John Deere Front Loader | 2010 | | 7,500.00 | n/a | n/a |
| 35 | | John Deere Tractor | 420 | | 4,500.00 | n/a | n/a |
| 36 | | Kubota Front Loader | | | 3,900.00 | n/a | n/a |
| 37 | | John Deere Diesel Tractor | | | 4,600.00 | n/a | n/a |
| 38 | | 12 Steel Docks/ Piles with Floats | | | 26,500.00 | n/a | n/a |

| NUMBER | YEAR | DESCRIPTION | MODEL | SERIAL NUMBER | FLOORED AMT. | WHOLESALE | RETAIL |
|---|---|---|---|---|---|---|---|
| 39 | | Ford Hyrda Tractor | 10465–140 | | 1,800.00 | n/a | n/a |
| 40 | | Jaeger Cetrifugel Pump | 10729 | | 3,300.00 | n/a | n/a |
| 41 | | Ford Front End Loader | C456093 | | 30,000.00 | n/a | n/a |
| 42 | | PH 15 Ton Picker | 30499 | | 35,000.00 | n/a | n/a |
| 43 | | PH Track Crane | | 22485 | 12,000.00 | n/a | n/a |
| 44 | | NW Mobile Crane | 1–30T–1 | | 11,500.00 | n/a | n/a |
| 45 | | Steel Barge | 1–8x14 | | 4,500.00 | n/a | n/a |
| 46 | | Pin Barges | 10x40 & 12x40 | | 26,000.00 | n/a | n/a |